IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYRALL McGLOTTEN**<br>*Plaintiff,*<br><br>v.<br><br>**GOODWILL INDUSTRIES OF DELAWARE AND DELAWARE COUNTY, INC.**<br>*Defendant,* | Case No. 2:23-cv-2926 |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**December 12, 2023**

Plaintiff Tyrall McGlotten has sued his former employer Defendant Goodwill Industries of Delaware and Delaware County for discriminating against him because of his race. Goodwill seeks dismissal under Rule 12(b)(6), or alternatively to transfer venue. For the foregoing reasons, Goodwill's motion is **DENIED**.

### I.　　Alleged Facts

Plaintiff Tyrall McGlotten ("McGlotten") is a Black man who began working for the Defendant Goodwill Industries of Delaware and Delaware County ("Goodwill") in September 2019 as an Operations Logistics Manager. Pl. Compl. ¶¶ 10–12, ECF 1. Goodwill is a 501(c)(3) nonprofit that provides "job training, social services, and employment support" for individuals and operates retail stores that sell donated items.[1]

---

[1] Mission, Vision, and Values, GOODWILL DEL. AND DEL. CNTY. (Nov. 28, 2023), https://perma.cc/E29K-9PEF. This Court takes judicial notice because Goodwill's mission and operation are "generally known" within this Court's territorial jurisdiction and "can be accurately and readily determined" from accurate sources. Fed. R. Evid. 201(b)(2).

As an Operations Logistics Manger, McGlotten oversaw transportation of goods, management of two warehouses, and supervised a retail store outlet and three donation centers in Delaware and Pennsylvania. Compl. ¶ 11.

McGlotten alleges Goodwill took various racially discriminatory actions against him, beginning within a year of his hire.

- June 2020: The air conditioning in one of Goodwill Industries' facilities broke. McGlotten and several Black employees working at the time became very hot. One of the managers, Karen Hunt (White woman) asked the group of employees if they felt like they were picking cotton. Compl. ¶¶ 17–18. McGlotten complained about Hunt's comment to Human Resources, who did not reprimand her. Compl. ¶¶ 19, 21.
- June 30, 2020: Greg Bianchi (White man), McGlotten's supervisor, referred to him as one of "you people" with regularity. Compl. ¶ 23 McGlotten complained about Bianchi's comment and his microaggressions to Goodwill Industries CEO, Colleen Morrone (White woman). Compl. ¶ 24. Nothing was done. Compl. ¶ 27.
- April / May, 2021: McGlotten walked into CEO Morrone's office, where she was meeting with a Human Resources Manager. ¶ 28. McGlotten overheard Morrone say she was the CEO of "N*ggerville." Compl. ¶ 29. Afterward, he complained about this remark and other incidents to Goodwill Industries board chair Marvin Hargrove, who did not act. Compl. ¶¶ 30, 32.
- 2020–23: Two other White managers at the same tier of operations as McGlotten received company cars, company gas cards, and a company EZ pass that he did not. Compl. ¶¶ 34–37. When he asked for the benefits, CEO Morrone denied McGlotten's request. Compl. ¶¶ 39–41.

- <u>Unspecified timing</u>: One of McGlotten's subordinates, Oliver Kanaih (non-Black employee), against McGlotten's direction, arrived for work before opening hours and refused to remain seated as part of an injury accommodation. Compl. ¶¶ 44–45, 47–49. Goodwill would not allow McGlotten to discipline Kanaih, while allowing "similarly situated White coworkers" to discipline their employees who ignored instructions. Compl. ¶¶ 50–51.

On or around December 16, 2022, McGlotten found out that Goodwill was over $500,000 in arears because various vendors had not paid for products they received. Compl. ¶¶ 52–53 McGlotten was not responsible for the failure to collect. Compl. ¶¶ 58–62. Rather, Kanaih was supposed to collect payment before releasing products. <u>Id.</u> McGlotten would only have known about the non-payments if Kanaih or the Accounting Department had told him. Compl. ¶ 63. Neither informed him of the problem. Instead, McGlotten learned of the deficit when Goodwill's Chief Financial Officer, Maba Alabi, emailed him. Compl. ¶ 52. When he found out, McGlotten reached out to the vendors and secured the outstanding payments. Compl. ¶ 54. Then, on March 30, 2023, McGlotten was fired for the arears incident. Compl. ¶ 55. He was the only one terminated. Compl. ¶ 65.

II.     **Procedural History**

On July 31, 2023, McGlotten filed this suit against Goodwill. He alleges Goodwill violated Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 1981. McGlotten asserts six claims, three of which are substantively identical under both statutes:

(1) Goodwill discriminated against him on the basis of his race, under Title VII and § 1981 ("Discrimination");

(2) Goodwill harassed him by subjecting him to a severe and pervasive racially hostile work environment under Title VII and § 1981 ("Harassment"); and

(3) Goodwill retaliated against him for complaining about racial discrimination under Title VII and § 1981 ("Retaliation").

On September 29, 2023, Goodwill filed a Motion to Dismiss the § 1981 claims (not the Title VII claims) and transfer venue to the District of Delaware. McGlotten filed his Response on October 13, and Goodwill filed its Reply on October 20.

### A. Goodwill's Contentions

Goodwill asks the Court to dismiss McGlotten's § 1981 claims because he does not sufficiently plead "but-for" causation. Def. Mot. to Dismiss 7, ECF 7. Goodwill argues that McGlotten's § 1981 claims, unlike his Title VII claims, require this closer nexus of causation. Id.

For the Harassment claim, Goodwill asserts that three instances of alleged racial incidents over several years do not establish the "severity and pervasiveness" harassment claims demand. Id.

Third, Goodwill argues the lack of temporal proximity between McGlotten's complaints about racial treatment and his firing defeats his Retaliation claim. Id.

Alternatively, Goodwill asks this Court to transfer venue to the District of Delaware under 28 U.S.C. § 1404(a). Goodwill argues that venue is proper in Delaware and that the public and private interests favor transfer. Id. at 11. Its principal argument is that the allegedly discriminatory actions took place in Delaware, not Pennsylania. Id. at 11–12.

### B. McGlotten's Response

McGlotten's response is straightforward. The allegations in the Complaint plainly allege McGlotten "was subjected to discrimination and harassment because of his race." Pl. Resp. 2, ECF 8.

For the Discrimination claim, McGlotten points to four incidents: (1) Goodwill denied McGlotten a company vehicle that similarly situated non-Black employees received, (2) Goodwill denied McGlotten use of the company EZ Pass that non-Black employees received, (3) Goodwill denied McGlotten use of a company card that similarly situated non-Black employees received, and (4) Goodwill erroneously fired McGlotten while failing to hold the truly culpable non-Black employees responsible. Id. at 10.

Responding to the Harassment claim, McGlotten inventories eight instances of alleged racial discrimination to establish severe or pervasive racial hostility. Id. at 8–9. In addition to the four actions listed in the preceding paragraph, McGlotten reiterates that the cotton-picking remark, the "you people" statement, CEO Morrone's N*ggerville comment, and Goodwill's refusal to allow McGlotten to manage his subordinates constitute racial harassment. Id.

For the Retaliation claim, McGlotten argues that the timing of his termination and the lack of reprimand for the culpable non-Black employees are unduly suggestive of retaliation. Id. at 11–12.

Finally, McGlotten resists venue transfer. He asserts that Goodwill is a resident of not only Delaware, but also Delaware County. Id. at 13. McGlotten also argues that the 32.4 mile distance between the District of Delaware and Eastern District of Pennsylvania courthouses does pose a cognizable inconvenience for transfer. Id. He also contends public interests favor the Eastern District because McGlotten filed a pre-suit discrimination claim against Goodwill with the Pennsylvania Human Relations Commission. Id.

### III. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). At the same time, the Third Circuit favors substance over form—"a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations and quotations omitted).

### IV. Discussion

The substantive elements are the same for discrimination, harassment, and retaliation claims under both § 1981 and Title VII. Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (analyzing § 1981 discrimination, harassment, and retaliation under Title VII framework).

Because it can be difficult to find direct evidence of racial animus "[b]efore discovery has unearthed relevant facts and evidence," a plaintiff can rely on indirect evidence to survive a 12(b)(6) motion under a burden-shifting framework. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). Moreover, because courts are only to review the sufficiency of the Complaint, not defenses, at the 12(b)(6)

6

stage, "a claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite prima facie elements have been established" by the plaintiff. Castleberry, 863 F.3d at 266.

### A. Discrimination

Under a § 1981 discrimination claim, a plaintiff must show (1) that he belongs to a racial minority; (2) that the defendant harbored an invidious racial motivation; and (3) that such bias motivated an adverse employment decision. Estate of Olivia ex re. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010). Grafting the McDonnell Douglas framework onto this test, the plaintiff satisfies prongs 2 and 3 so long as he was allegedly qualified for the position and the adverse action "occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). This burden "is not onerous," and may be proven when similarly situated employees "not in the protected class were treated more favorably." Weldon v. Kraft, Inc., 896 F.2d 893, 797 (3d Cir. 1990). Finally, a plaintiff must also plausibly allege that his race was the but-for cause for the adverse employment action. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014–15 (2020).[2]

McGlotten sufficiently alleges his § 1981 Discrimination claim. First, he is a Black man. Second, the Complaint makes out his qualifications for his position—he held his job for four years in a management position and knew the procedures and processes of Goodwill.[3] Third, he

---

[2] The causation nexus is the only substantive difference between § 1981 and Title VII discrimination claims. Under Title VII, a discriminatory action is unlawful if race was a "motivating factor," even if it was not a decisive one. Price Waterhouse v. Hopkins, 490 U.S. 228, 249–50 (1989) (plurality opinion) (superseded by 42 U.S.C.A. § 2000e-2(m) that codified racial animus impermissible even if a motivating factor).

[3] Goodwill does not contest these points.

has pled multiple factual circumstances that give rise to an inference of racial discrimination when Goodwill fired him and denied him transportation benefits. For one, the anti-Black enmity espoused from CEO Morrone through the chain of command plausibly suggests race motivated the firing decision. See Goldo v. Bank of Am. Corp., 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (inference supportable by "statements or actions by [plaintiff's] supervisors suggesting racial animus"). Additionally, similarly situated non-Black employees who were allegedly responsible for the arears issue were treated more favorably than McGlotten—they kept their jobs. See Anderson v. Wachovia Mortg. Corp., 631 F. 3d 261, 273 (3d Cir. 2010). And non-Black employees at the same management tier (i.e. similarly situated) as McGlotten received greater transportation benefits. These facts, taken together, give rise to the plausible inference that but for McGlotten's race, he would not have been fired.[4]

B. Harassment

Section 1981 harassment claims allege a hostile work environment based on race. Castleberry, 863 F.3d at 263. The plaintiff must show: "1) the employee suffered intentional discrimination because of his/her race, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior

---

[4] Goodwill apparently interprets Comcast to radically alter McGlotten's § 1981 claims compared to his Title VII bases for relief. As many in-Circuit district courts have concluded, it did not. See, e.g., Clemente v. Allstate Ins. Co., 647 F. Supp. 3d 356, 371 (W.D. Pa. 2022) (finding that Comcast "addresses the causation standard that applies to section 1981 claims" and "does not disrupt the preexisting precedent that a plaintiff . . . need only allege facts that give rise to a plausible inference of discriminatory intent.") (emphasis in original); Nelatury v. Pennsylvania State Univ., 633 F. Supp. 3d 716, 737 (W.D. Pa. 2022) (continuing to analyze § 1981 discrimination claim as largely similar with Title VII discrimination claim post-Comcast); Two Two v. NAPA Transportation, Inc., 2020 WL 12764630, at *2 (M.D. Pa. Nov. 20, 2020) (reaffirming denial of summary judgment on § 1981 discrimination claim after reconsidering original order in light of Comcast).

liability (meaning the employer is responsible)." Castleberry, 863 F.3d at 263 (internal quotations and citations omitted).

Harassment must be either "severe or pervasive." Castleberry, 863 F.3d at 264 (emphasis in original). For instance, a "supervisor's single use of the 'n-word'" can be adequately severe to state a harassment claim. Castleberry, 863 F.3d at 264. Or, less intense degradation, if sufficiently pervasive, can make out the case as an alternative basis. Castleberry, 863 F.3d at 264. At root, the test is a familiar totality of circumstances evaluation, which includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

McGlotten has adequately pled his harassment claim. Castleberry plainly held that a single use of the n-word can pollute the work environment with racial animosity. The history and toxicity of the n-word render its use different than run-of-the-mill offensive utterances. And several district courts have since concluded that limited use of the n-word in the presence of the plaintiff sufficiently pleads harassment. See, e.g., Nuness v. Simon and Schuster, Inc., 325 F. Supp. 3d 535, 546–54 (D.N.J. 2018) (finding employer calling plaintiff a portmanteau of the n-word and piglet created genuine dispute of material fact to survive summary judgment on harassment claim) Here, the context is particularly acute because the comment comes from the organization's top corporate officer in McGlotten's presence. But more, McGlotten accuses Goodwill of more than a single use of the n-word from Goodwill's CEO, but also plausibly alleges a "pervasive" theory as well. See Castleberry, 863 F.3d at 265–66.

### C. Retaliation

An employer unlawfully retaliates against its employee when (1) the employee engages in protected activity; (2) the employer takes an adverse employment action against the employee; and (3) there is a causal connection between the employee's participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006). When the protected activity is the employee reporting a § 1981 or Title VII violation, the employee "must have acted under a good faith, reasonable belief that a violation existed." Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015).

Without close temporal proximity between the protected activity and alleged retaliation, circumstances including "any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action" can support a retaliation claim. Daniels, 776 F.3d at 196.

McGlotten sufficiently pled his Retaliation claim. McGlotten made at least four separate complaints about Goodwill's discriminatory treatment. Per the Court's analysis above, they qualify as good-faith § 1981 complaints. Even assuming none of the complaints are "unusually suggestive" from a temporal perspective, Goodwill's inconsistent basis for firing McGlotten gives rise to a retaliatory inference. According to the Complaint, McGlotten was not the culpable party for the arears and he rectified the situation promptly. The frequency of McGlotten's complaints, McGlotten's continued alleged discriminatory treatment, and the inconsistent basis for his firing sufficiently make out a plausible retaliation claim at this stage of litigation.

D. **Venue Transfer**

A defendant moving to transfer venue bears the burden of demonstrating that (1) the case could have been brought in the proposed transfer forum, (2) that private interests of the parties favor transfer and that (3) public interests of justice favor transfer. 28 U.S.C. § 1404(a); Jumara v. State Farm Ins. Co., 44 F.3d 873, 879 (3d Cir. 1995); Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The plaintiff's original choice of venue "should not be lightly disturbed." Jumara, 44 F.3d at 879 (internal quotations and citations omitted). Rather, transfer is appropriate only if "the balance of the parties is strongly in favor of [the] defendant." Shutte, 431 F.2d at 25 (internal quotations and citations omitted).

Jumara instructs with relevant private interests:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; [6] and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

Jumara, 44 F.3d at 879. Public interest include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases[.]

Jumara, 44 F.3d at 879–80.

Parties agree that McGlotten could have filed suit in Delaware. Turning to the private factors, Goodwill argues they "all" favor transfer. Mot. to Dismiss 11. McGlotten counters that Goodwill has not provided any evidence to meet its burden. Pl. Resp. 13.

11

Goodwill has not met its heavy burden that private factors favor transfer. Only one factor, defendant's preference, clearly weighs for transfer. None of the others do. McGlotten clearly prefers the Eastern District (factor one). Jumara is clear that witness and document availability is relevant only to the extent that one of the two fora has exclusive access to this evidence. Jumara, 55 F.3d at 879. Without knowing the residency of witnesses at this time, this Court cannot find any will be exclusively available in Delaware or the Eastern District. Finally, because McGlotten's place of employment included Delaware County, the alleged discrimination, retaliation, and harassment occurred partially in the Eastern District (factor three).

Goodwill similarly fails to meet its burden that public factors weigh transfer. Goodwill's argument consists of a one-sentence invocation that local interests favor Delaware and court congestion favors Delaware. Mot. to Dismiss 11. This does not meet its evidentiary burden. Moreover, considering that Goodwill operates extensively in Delaware County and McGlotten filed his discrimination claims with the Pennsylvania Human Relations Commission, the Eastern District retains an interest in this litigation. Compl. ¶¶ 2, 8. Altogether, Goodwill has not met its burden to transfer this action.

### V. Conclusion

For the foregoing reasons, Goodwill's Motion to Dismiss / Transfer is **DENIED**.